IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE, AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA,<br><br>              Plaintiff,<br><br>   v.<br><br>GENERAL MOTORS LLC,<br><br>              Defendant. | 2:10-cv-11366-AC-MJH<br><br><br><br>**Honorable Avern Cohn**<br>**Magistrate Judge Michael Hluchaniuk** |

**PLAINTIFF UAW's STATEMENT OF MATERIAL
FACTS NOT GENUINELY IN DISPUTE**

     1.    Plaintiff UAW is a labor organization that has represented employees of General Motors in collective bargaining for more than 50 years.  (Ex. 11, Declaration of Daniel Sherrick ("Sherrick Decl."), ¶ 3)

     2.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this lawsuit asserts a claim that Defendant General Motors LLC ("GM" or "New GM") has breached its obligations under a labor contract in violation of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.  (Complaint, Dkt No. 1, ¶ 1)

     3.    Venue is proper in this Court pursuant to 29 U.S.C. § 185 and 28 U.S.C. § 1391(b) because both the UAW and GM maintain their principal offices in this District. (Complaint, Dkt No. 1, ¶¶ 4-5; Answer, Dkt No. 5, ¶¶ 4-5)

     4.    Exhibit 2 is a true and correct copy of the June 22, 2007 UAW-Delphi-GM Memorandum of Understanding Delphi Restructuring ("Restructuring MOU") between the UAW, General Motors Corporation ("Old GM"), and Delphi that was previously filed with this Court on November 17, 2011.  (Ex. 1, Stipulation)[1]

---

[1] The agreements attached as Exhibits 2-10 to the UAW's Motion for Summary Judgment were previously submitted to this Court on November 17, 2011 with highlighting added by both parties.  The copies of these agreements that are submitted along with this Motion for Summary Judgment contain highlighting only by the UAW of the portions relevant to this Motion, in accordance with Section III of the Court's Motion Practice Guidelines.

5.     The Restructuring MOU was approved by the Delphi bankruptcy court on July 19, 2007.  (Dkt No. 8693, *In re Delphi Corporation et al.*, Case No. 05-44481 (Bankr. S.D.N.Y.))

6.     The DC VEBA, which stands for "defined contribution Voluntary Employees' Beneficiary Association," was established in 2006 pursuant to a settlement agreement that resolved the class action lawsuit *Int'l Union, UAW v. General Motors Corp.*, Civil Action No. 05-73991 (E.D. Mich.) ("*Henry I*").  (Ex. 11, Sherrick Decl. ¶ 4)

7.     The Restructuring MOU provides that Old GM would make a $450 million payment to the DC VEBA upon the occurrence of the following "events": "(a) execution by Delphi and GM of a comprehensive settlement agreement resolving the financial, commercial, and other matters between them and (b) the substantial consummation of a plan of reorganization proposed by Delphi in its Chapter 11 cases and confirmed by the Bankruptcy Court which incorporates, approves and is consistent with all of the terms of this Agreement and the comprehensive settlement agreement between Delphi and GM."  (Ex. 2 at ¶¶ J.2, K.2)

8.     Exhibit 3 is a true and correct copy of the September 6, 2007 Global Settlement Agreement between Old GM and Delphi ("Original GSA") that was previously filed with this Court on November 17, 2011.  (Ex. 1, Stipulation)

9.     The Original GSA set forth certain GM commitments to provide financial support for Delphi's restructuring efforts, as well as approximately $4 billion in cash, stock and notes that Old GM would receive from Delphi on the effective date of a Delphi plan of reorganization approved by the Delphi bankruptcy court.  (Ex. 3 at §§ 2.03(c)(iv), 4.04(a); Ex. 23 at 6 ¶ 11)

10.     On December 10, 2007, Delphi filed a proposed plan of reorganization with the Delphi Bankruptcy Court that incorporated and endorsed the terms of the Original GSA, but because of deteriorating economic conditions and Delphi's loss of exit financing, this plan was never consummated.  (Dkt No. 11386, *In re Delphi Corporation et al.*, Case No. 05-44481 (Bankr. S.D.N.Y.), at § 5.4; Ex. 23 at p.6 ¶ 12)

11.     In 2008, a new VEBA – called "New VEBA" – was created as part of a settlement agreement to resolve the class action lawsuit *Int'l Union, UAW, et. al. v. General Motors Corp.*, Civil Action No. 07-14074 (E.D. Mich.) ("*Henry II*").  (Ex. 11, Sherrick Decl. at ¶ 5)

12.     Exhibit 4 is a true and correct copy of the *Henry II* settlement agreement between the UAW and Old GM ("Henry II Settlement") that was previously filed with this Court on November 17, 2011.  (Ex. 1, Stipulation)

13.     Frederick "Fritz" Henderson was Old GM's lead negotiator in the negotiations that led to the Henry II Settlement.  (Ex. 14, Declaration of Ramya Ravindran ("Ravindran Decl.) ¶¶ ▓ 3; ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 16, Deposition of Frederick Henderson, at 43:11-15)

14.     Mr. Henderson testified as follows at his deposition:

2

> Q. And my question to you was -- and I think you've answered it, but just to be clear about it, at the time that the [Henry II Settlement] became finalized, that's the agreement -- Exhibit 98, it was not your belief that the $450 million conditional payment had been extinguished, correct?
>
> A. Correct.

(Ex. 16, Deposition of Frederick Henderson, at 201:17-202:1)

15. Mr. Henderson also testified at his deposition that "it didn't occur to me or anybody that [the $450 million payment obligation] had been extinguished as a result of this [Henry II Settlement]." (Ex. 16, Deposition of Frederick Henderson, at 201:14-16).

16. In the negotiations between the UAW and Old GM that resulted in the Henry II Settlement establishing the New VEBA, the parties engaged in actuarial and financial calculations to estimate the liabilities that would be incurred by the New VEBA once it became responsible for the provision of retiree medical benefits, and to design a contribution structure that would match these liabilities with the goal of achieving 80 years of solvency for the New VEBA. (Ex. 11, Sherrick Decl. ¶ 6)

17. In the calculations prepared and exchanged between the parties in the discussions that resulted in the Henry II Settlement, the parties included the $450 million payment obligation to the DC VEBA as one of the funding sources to be taken into account in determining the appropriate contributions needed to achieve 80 years of solvency for the New VEBA. (Ex. 11, Sherrick Decl. ¶ 6; ███████████████████████████████████ ███████████████████████)

18. Because the Henry II Settlement provided that the assets and liabilities of the DC VEBA were to be transferred to the New VEBA, for purposes of determining funding levels for the New VEBA, the parties recognized that this $450 million would be paid to the DC VEBA when the conditions stated in the Restructuring MOU were satisfied, and would then be part of the assets that were transferred to the New VEBA when the DC VEBA was later transferred to the New VEBA pursuant to Section 12.C of the Henry II Settlement. (Ex. 11, Sherrick Decl. ¶ 6)

19. The Henry II Settlement was approved by the *Henry II* court on July 31, 2008. (Dkt No. 66, *Int'l Union, UAW, et. al. v. General Motors Corp.*, Civil Action No. 07-14074 (E.D. Mich.))

20. Exhibit 5 is a true and correct copy of the September 12, 2008 Amended and Restated Global Settlement Agreement between Old GM and Delphi ("Amended and Restated GSA") that was previously filed with this Court on November 17, 2011. (Ex. 1, Stipulation)

21. The Amended and Restated GSA superseded the Original GSA. (Ex. 5 at p.5)

22. Under the terms of the Amended and Restated GSA, Old GM agreed to enhance its financial support for Delphi's restructuring efforts and modify the compensation it would receive from Delphi. The Amended and Restated GSA provided that Old GM would receive approximately $2 billion in allowed administrative expense claims, as well as an allowed general

3

unsecured claim in the amount of $2.5 billion. (Ex. 14, Ravindran Decl. ¶ 10; Ex. 23 at pp. 6-7 ¶ 13; Ex. 5 at § 4.04(a)-(b))

23. On September 26, 2008, the Delphi bankruptcy court issued an order that approved the Amended and Restated GSA and authorized Delphi to implement certain provisions of that agreement immediately pursuant to separately-negotiated "implementation agreements" with the unions that represented Delphi workers, including the UAW. (Dkt No. 14287, *In re Delphi Corporation et al.*, Case No. 05-44481 (Bankr. S.D.N.Y.); Ex. 14, Ravindran Decl. ¶ 10; Ex. 23 at 7 ¶ 14)

24. In the Fall of 2008, Old GM approached the UAW and requested the UAW's agreement to adjust some of the terms of the Restructuring MOU in order to implement provisions in the Amended and Restated GSA. (Ex. 11, Sherrick Decl. ¶ 10)

25. Exhibit 6 is a true and correct copy of the September 26, 2008 UAW-Delphi-GM Implementation Agreement Regarding 414(l) Transfers, Implementation of Term Sheet, Delphi Pension Freeze and Cessation of OPEB, and Application of Releases ("Implementation Agreement") between the UAW, Old GM, and Delphi that was previously filed with this Court on November 17, 2011. (Ex. 1, Stipulation)

26. The Implementation Agreement states that "[t]he [$450 million] payment required by sections J(2) and K(2)(e) [of the Restructuring MOU] shall remain payable as set forth in the Restructuring MOU." (Ex. 6 at ¶ 6)

27. In 2009, GM approached the UAW and requested the UAW's agreement to GM taking ownership of the four sites that were referred to as the "Keep Sites" in the Restructuring MOU. (Ex. 11, Sherrick Decl. ¶ 11)

28. Exhibit 7 is a true and correct copy of the May 16, 2009 Memorandum of Understanding Delphi Keep Sites between the UAW and GM that was previously filed with this Court on November 17, 2011. (Ex. 1, Stipulation)

29. Exhibit 8 is a true and correct copy of the Master Disposition Agreement between Delphi, GM, and certain third parties that was previously filed with this Court on November 17, 2011. (Ex. 1, Stipulation)

30. The Master Disposition Agreement modified portions of the Amended and Restated GSA, including waiving GM's right to recover billions of dollars in administrative claims in the Delphi bankruptcy and transferring to GM ownership of the Keep Sites that Delphi was to own and operate under the terms of the Restructuring MOU. (Ex. 8 at §§ 2.1.3, 3.1.1(C))

31. On June 20, 2009, GM filed a motion in the GM bankruptcy court requesting approval to enter into the transactions set forth in the Master Disposition Agreement, including taking ownership of the Keep Sites. (Ex. 14, Ravindran Decl. ¶ 8; Ex. 21 at 1, 7-8)

32. Exhibit 9 is a true and correct copy of the 2009 UAW Retiree Settlement Agreement between the UAW and GM that was previously filed with this Court on November 17, 2011. (Ex. 1, Stipulation)

33. When drafting the 2009 UAW Retiree Settlement Agreement, the parties used the Henry II Settlement as their starting point and modified only those terms in the Henry II Settlement that needed to be changed to reflect subsequent agreements between the parties pertaining to the payment obligations to the New VEBA. If an entire section of the Henry II Settlement had become moot or was no longer applicable, that section was listed as "reserved" in the 2009 UAW Retiree Settlement Agreement rather than deleting the section so that even the paragraph numbering could remain the same. (Ex. 11, Sherrick Decl. ¶¶ 7, 9)

34. Exhibit 10 is a true and correct copy of the Amended and Restated Master Sale and Purchase Agreement ("MPA") between Old GM, New GM, and certain third parties that was previously filed with this Court on November 17, 2011. (Ex. 1, Stipulation)

35. The MPA was approved by the GM bankruptcy court in a "Sale Order" dated July 5, 2009. (Dkt No. 2968, *In re General Motors Corp. et al.*, Case No. 09-50026 (Bankr. S.D.N.Y.))

36. On June 1, 2009, Delphi filed a proposed modified plan of reorganization with the Delphi bankruptcy court ("Modified Plan of Reorganization"). (Ex. 14, Ravindran Decl. ¶ 5; Ex. 18; Dkt No. 16646, *In re Delphi Corporation et al.*, Case No. 05-44481 (Bankr. S.D.N.Y.))

37. On July 30, 2009, the Delphi bankruptcy court entered an order confirming Delphi's Modified Plan of Reorganization. (Ex. 14, Ravindran Decl. ¶ 6; Ex. 19)

38. Delphi's Modified Plan of Reorganization incorporated and endorsed all of the terms of the Master Disposition Agreement. (Ex. 14, Ravindran Decl. ¶ 5; Ex. 18 at §§ 1.56, 1.80, 1.104, 1.108-1.110, 1.233, 1.235, 7.3, 7.6, 7.7, 11.4)

39. Delphi's Modified Plan of Reorganization incorporated and reaffirmed the terms and obligations of the Amended and Restated GSA except to the extent modified by the Master Disposition Agreement. (Ex. 14, Ravindran Decl. ¶ 5; Ex. 18 at §§ 1.56, 1.57, 11.4)

40. Delphi's Modified Plan of Reorganization incorporated and reaffirmed the terms and obligations of the Restructuring MOU, including those terms that were modified to conform to the terms of the Master Disposition and the Amended and Restated GSA. (Ex. 14, Ravindran Decl. ¶ 5; Ex. 18 at §§ 1.56, 1.80, 1.104, 1.108-1.110, 1.233, 1.235, 7.3, 7.6, 7.7, 11.4; Ex. 11, Sherrick Decl. ¶¶ 10-11; Ex. 6; Ex. 7)

41. On October 6, 2009, Delphi's Modified Plan of Reorganization was substantially consummated. (Ex. 14, Ravindran Decl. ¶ 7; Ex. 20 at ¶ 3)

42. Exhibit 12 is a true and correct copy of a letter sent by the UAW to GM on October 29, 2009, regarding payment of the $450 million. (Ex. 11, Sherrick Decl. ¶ 14)

43. Exhibit 13 is a true and correct copy of a letter sent by GM to the UAW on November 11, 2009, in response to the UAW's October 29, 2009 letter. (Ex. 11, Sherrick Decl. ¶ 15)

44. At the time of the exchange of letters in 2009 between the UAW and GM regarding payment of the $450 million, the DC VEBA was still in existence and was fully operational. Had GM made the $450 million payment at that time, the money would have gone to the DC VEBA. (Ex. 11, Sherrick Decl. ¶ 16)

45. On January 16, 2010, while the dispute regarding the $450 million payment obligation remained unresolved, all of the assets and liabilities of the DC VEBA were transferred to the New VEBA, and the DC VEBA was terminated under the terms of Section 12.C of the 2009 UAW Retiree Settlement Agreement. (Ex. 11, Sherrick Decl. ¶ 17; Ex. 9 at 15)

46. Virtually all of the Delphi retirees covered by the Restructuring MOU are former employees of GM by virtue of their employment at Delphi prior to Delphi's 1999 spin-off from GM. (Ex. 11, Sherrick Decl. ¶ 13; Ex. 14, Ravindran Decl. ¶ 10; Ex. 23 at p.4 ¶ 6)

Respectfully submitted,

/s/ ANDREW D. ROTH

| | |
|---|---|
| Jeffrey D. Sodko (P65076) | Andrew D. Roth (DC Bar 414038) |
| jsodko@uaw.net | aroth@bredhoff.com |
| Associate General Counsel, | Ramya Ravindran (DC Bar 980728) |
| International Union, UAW | rravindran@bredhoff.com |
| 8000 East Jefferson Avenue | W. Gary Kohlman (DC Bar 177527) |
| Detroit, Michigan 48214 | gkohlman@bredhoff.com |
| Telephone: (313) 926-5216 | BREDHOFF & KAISER, PLLC |
| Facsimile: (313) 926-5240 | 805 Fifteenth Street, N.W., Suite 1000 |
| | Washington, D.C. 20005 |
| | Telephone: (202) 842-2600 |
| | Facsimile: (202) 841-1888 |
| Dated: November 15, 2012 | *Counsel for Plaintiff UAW* |

CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2012, I electronically filed Plaintiff UAW's Statement of Material Facts Not Genuinely In Dispute with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Robert S. Walker
Email: rswalker@jonesday.com
Jones Day
North Point,   901 Lakeside Avenue
Cleveland, Ohio 44114

Johanna F. Parker
Email: jfparker@jonesday.com
Jones Day
North Point, 901 Lakeside Avenue
Cleveland, OH 44114-1190

Edward W. Risko
Email: edward.w.risko@gm.com
General Motors Corporation
Legal Staff
300 Renaissance Center
Suite MC 482-C24-C66
Detroit, MI 48265-3000

/s/ ANDREW D. ROTH
Andrew D. Roth (DC Bar 414038)
**Bredhoff & Kaiser, PLLC**
805 Fifteenth Street, N.W., Suite 1000
Washington, DC 20005
(202) 842-2600
Email: aroth@bredhoff.com