UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, <br><br> Plaintiff, <br> vs. <br><br> GENERAL MOTORS LLC, <br><br> Defendant. | 2:10-cv-11366-AC-MJH <br><br> Honorable Avern Cohn |

### DEFENDANT GENERAL MOTORS LLC'S CONSOLIDATED AND CHRONOLOGICAL RESPONSE TO PLAINTIFF UAW'S SUPPLEMENTAL STATEMENT OF MATERIAL FACTS AND STATEMENT OF ADDITIONAL MATERIAL FACTS

This Court directed the parties to provide supplemental material facts regarding whether "GM assumed Old GM's obligation [to make the contingent $450 million additional VEBA payment ("$450M Payment")] under the MOU." *See* R. 61 at p. 1. In that regard, the record evidence shows that, while New GM did assume certain obligations set forth in the 2007 MOU (including particularly certain obligations relating to pensions), an obligation to make the $450M Payment was not among them. Although the facts propounded by the UAW and by New GM below are important background, the single essential and controlling undisputed fact on this question is the language of the unambiguous 2009 Retiree Settlement Agreement ("2009 RSA"). As the Bankruptcy Court expressly ordered, "all obligations of the Purchaser and the Sellers to provide [health care benefits] to members of the Class and the Covered Group [which

CLI-2119426v2

encompasses UAW members and retirees] shall be governed by the [2009 RSA.]" *See* Sale Order, attached to R. 62, at ¶ 20. Based on the undisputed facts, New GM did not take on any obligation to make the $450M Payment.

New GM provides its responses to the UAW's supplemental statement of material facts as well as its additional facts as one consolidated and chronological statement.

1. On September 26, 2008, General Motors Corporation ("Old GM"), Delphi Corporation ("Delphi") and the UAW entered into the Implementation Agreement. *See* R. 41, Ex. 6. The Implementation Agreement was required to implement certain provisions of the amended global settlement agreement ("Amended GSA") between Old GM and Delphi, and specifically to make certain provisions of the 2007 Memorandum of Understanding among Old GM, Delphi and the UAW ("2007 MOU") immediately effective. *Id.*

2. In the Implementation Agreement (among other provisions), the UAW requested, and Old GM agreed, to make the $450M Payment "as set forth in the Restructuring MOU [*i.e.,* the 2007 MOU]." *See* R. 41, Ex. 6, at ¶ 6; *see also* R. 42, New GM SMF, at Response to No. 26. The 2007 MOU provided for the $450M Payment pursuant to the following conditions precedent:

> The parties acknowledge that the following provisions of this Agreement [the 2007 MOU] will not become effective until all of the following events have occurred and as of the date when the last of such events shall have occurred: (a) execution by Delphi and GM of a comprehensive settlement agreement resolving the financial, commercial, and other matters between them and (b) the substantial consummation of a plan of reorganization proposed by Delphi in its chapter 11 cases and confirmed by the Bankruptcy Court which incorporates, approves and is consistent with all of the terms of this Agreement [2007 MOU] and the comprehensive settlement agreement between Delphi and GM . . . .

*See* R. 41, Ex. 2, 2007 MOU, at § K(2)(e).

3. The $450M Payment is a payment for retiree healthcare obligations. *See* R. 61 at p. 1; R. 42, New GM SMF ¶ 50, and specifically the sworn testimony of UAW witnesses Gettelfinger (Ex. 30, pp. 98, 158-59), Curson (Ex. 31, p. 67), and Yearley (Ex. 33, p. 53). Such retiree healthcare obligations are separate from pension obligations and are included in an employer's liability for OPEB (*i.e.,* other post-employment benefits). *See, e.g., Southwestern Bell Tel. Co. v. FCC*, 28 F.3d 165, 168 (D.C. Cir. 1994) (recognizing that "[t]he 'other', which explains the

'O' in the OPEB acronym, is intended to exclude pension benefits; what is left generally consists of retirees' life insurance and medical and dental care benefits").

4. On September 26, 2008, the Delphi bankruptcy court approved both the Amended GSA and Implementation Agreement. *In re DPH Holdings Corp., et al.,* No. 05-44481, Dckt. 14287 (Bankr. S.D.N.Y. Sept. 26, 2008).

5. The Amended GSA is the "comprehensive settlement agreement" referenced in the 2007 MOU.  *See* R. 13, UAW Memorandum of Law, at p. 11.

6. On December 31, 2008, Old GM and the U.S. government entered into a Loan Agreement, by which the government provided emergency funding to Old GM. *See* R. 41, Ex. 37.

7. As an express condition of the loan, the government required Old GM to address its UAW OPEB obligations, and specifically its obligations for retiree medical benefits which were to be funded and provided by a VEBA.  Under the Loan Agreement, Old GM was required to modify the nature and extent of its contributions to the healthcare VEBA ("VEBA Modifications") such that:  "not less than one-half of the value of each future payment or contribution made by the Borrower and its Subsidiaries or any of them to the VEBA account (or similar account) pursuant to the Settlement Agreement in place as of December 31, 2008, shall be made in the form of the stock of the Borrower or one of its Subsidiaries, and that the total value of any such payment or contribution shall not exceed the amount of any such payment or contribution that was required for such time period under the Settlement Agreement in place as of December 31, 2008."  R. 41, Ex. 37 at Appendix A at § 1.01, p. 5; *see also In re General Motors Corp.*, 407 B.R. 463, 473, 478 (Bankr. S.D.N.Y. 2009).

8. The federal government's requirement of Old GM, as to its obligations to value and restructure its UAW OPEB liability, applied to *all* such OPEB obligations arising under *any* agreement between Old GM and the UAW in place as of December 31, 2008, including the Implementation Agreement.  Under the Loan Agreement, "Settlement Agreement" was contractually defined as: "that Settlement Agreement, dated February 21 2008 (as amended, modified or otherwise supplemented prior to the Effective Date), between the Borrower, the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and certain class representatives, on behalf of the class of plaintiffs in (1) the class action of *Int'l Union, UAW, et. al. v. General Motors Corp.*, Civil Action No. 07-14074 (E.D. Mich. filed Sept. 9, 2007) and/or (2) the class action of *UAW et al. v. General Motors Corp.*, No. 05-CV-73991, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006, aff'd, *Int'l Union, UAW v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)) and the transactions, agreements or arrangements contemplated thereby *or by similar agreements*."  *See* R. 41, Ex. 37 at Appendix A at § 1.01 at p. 4 (emphasis supplied).

9. On March 30, 2009, the U.S. government reiterated that Old GM had to address its UAW OPEB obligations as a condition of continued financing. President Obama "stated that the U.S. Government would provide assistance to avoid such a result [*i.e.,* the loans becoming due], *if* GM took the necessary additional steps to justify that assistance – including reaching agreements with the UAW, GM's bondholders, and the VEBA Trust." *See In re General Motors Corp.*, 407 B.R. 463, 479 (Bankr. S.D.N.Y. 2009) (emphasis in original).

10. Old GM and the UAW negotiated the required VEBA Modifications, culminating in meetings beginning on May 18, 2009, among representatives of Old GM, the UAW and the U.S. government. *See* R. 42, New GM SMF ¶ 80. At that May 18, 2009 meeting, Old GM made a VEBA proposal, which valued Old GM's total VEBA obligations at approximately $20 billion. *Id.* at Ex. 33-2, p. 4. In justifying this number to the UAW, Old GM expressly valued the contingent $450M Payment at $0, excluding the $450M Payment from future VEBA funding obligations. *Id.* Old GM's VEBA proposal also specified that (with the required modifications) any remaining UAW OPEB would be $0. *Id.*, Ex. 33-2 at p. 11.

11. In the May 2009 meetings regarding the VEBA, the UAW did not overlook nor forget about the $450M Payment. According to the UAW's key consultant and restructuring expert, Lazard's Andrew Yearley, then-UAW general counsel Daniel Sherrick knew that the $450M Payment would not part of the VEBA funding being negotiated by the parties, but said "let's go to getting a deal" and that the UAW would "go litigate" to get the $450M Payment, if necessary. *See* R. 42, New GM SMF ¶ 84, Ex. 33, Yearley Depo. at p. 140.

12. <u>UAW Proposed Fact No. 1</u>: On June 1, 2009, General Motors Corporation ("Old GM") filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code. (Dkt No. 1, *In re General Motors Corp. et al.*, Case No. 09-50026 (Bankr. S.D.N.Y.))

<u>New GM Response</u>: Undisputed.

13. <u>UAW Proposed Fact No. 2</u>: On the same day that it filed for bankruptcy, Old GM filed a motion with the bankruptcy court to approve a sale of Old GM's assets to New GM pursuant to a proposed Master Sale and Purchase Agreement under Section 363 of the Bankruptcy Code. (Dkt. No. 92, *In re General Motors Corp. et al.*, Case No. 09-50026 (Bankr. S.D.N.Y.)).

<u>New GM Response</u>: Incomplete. Old GM requested the following:

1. Approval of the Master Sale and Purchase Agreement ("MPA");
2. The sale of the Purchased Assets to be made "free and clear of liens, claims, encumbrances, and interests. . . .";
3. The assumption of the Assumable Executory Contracts;
4. The establishment of certain Cure Amounts; and

CLI-2119426v2

4

       5.      Approval of the UAW Retiree Settlement Agreement (which the parties here have referred to as the "2009 RSA"), pursuant to which the UAW agreed to modified obligations and payments regarding retiree medical benefits.

*See* Sale Order, attached to R. 62, at pp. 1-2. As demonstrated by this list, the 2009 RSA was a cornerstone of the 363 transaction.

14.    On June 1, 2009, Old GM presented to the bankruptcy court for approval the negotiated and agreed-upon form of the 2009 RSA as Exhibit D to the MPA. Dkt. No. 92, *In re General Motors Corp. et al.*, Case No. 09-50026 (Bankr. S.D.N.Y.)).

15.    On June 25, 2009, UAW representative David Curson provided a declaration to the bankruptcy court "in support of approval of the UAW Retiree Settlement Agreement and in response to objection letters submitted by individual UAW-represented retirees." R. 41, Ex. 31-3 at p. 1; Dkt. No. 2518, *In re General Motors Corp. et al.*, Case No. 09-50026 (Bankr. S.D.N.Y.). Mr. Curson's declaration stated that "[o]ne critical factor that the UAW considered during the negotiation process was the ability of New GM to fund the VEBA." R. 41, Ex. 31-3 at ¶ 7. Mr. Curson further explained that "[t]he solicitation package [provided to his union brothers and sisters] contained a description of the revised funding arrangements for retiree health benefits through the UAW Retiree Settlement Agreement." *Id.* at ¶ 12. There is no mention of the $450M Payment.

16.    <u>UAW Proposed Fact No. 3</u>: On June 26, 2009, Old GM, New GM and certain other third parties entered into an Amended and Restated Master Sale and Purchase Agreement ("June 26, 2009 MPA"). (Ex. 10, June 26, 2009 MPA).

<u>New GM Response</u>: Undisputed. There was no change to the form of the 2009 RSA.

17.    <u>UAW Proposed Fact No. 4</u>: Under sections 2.1, 2.2(a)(x), and 2.3(a)(ii) of the June 26, 2009 MPA, New GM agreed to "assume and thereafter pay or perform as and when due, or otherwise discharge, *all* of the Assumed Liabilities" set out in various "Purchased Contracts," one of which was the "UAW Collective Bargaining Agreement." (*Id.* at p. 23 § 2.1 (emphasis added), p. 25 § 2.2(a)(x), p. 28 § 2.3(a)(ii); *see also id.* at pp. 76-77 § 6.17(f)).

<u>New GM Response</u>: Incomplete. New GM does not dispute that the terms "Assumed Liabilities," "Purchased Contracts," and "UAW Collective Bargaining Agreement" are defined terms under the MPA. The "UAW Retiree Settlement Agreement" (*i.e.*, the "2009 RSA") also is a defined term under the MPA, and pursuant to the "UAW Retiree Settlement Agreement," which superseded prior agreements, the $450M Payment was not an Assumed Liability of New GM. *See* Sale Order, attached to R. 62, at ¶¶ 19, 20; R. 33, Ex. 10, MPA, at p. 22.

18. <u>UAW Proposed Fact No. 5</u>:  For these purposes, "Liabilities" is defined in the June 26, 2009 MPA to mean "any and all liabilities and obligations of every kind and description whatsoever, whether such liabilities or obligations are known or unknown, disclosed or undisclosed, matured or unmatured, accrued, fixed, absolute, *contingent*, determined or undeterminable, on or off-balance sheet or otherwise, or due or to become due, including Indebtedness and those arising under any Law, Claim, Order, Contract or otherwise." (*Id.* at p. 11 (emphasis added)).

    <u>New GM Response</u>:  Incomplete.  New GM does not dispute that the term "Liabilities" is a defined term under the MPA.  The "UAW Retiree Settlement Agreement" (*i.e.*, the "2009 RSA") also is a defined term under the MPA, and pursuant to the "UAW Retiree Settlement Agreement," which entirely governs New GM's obligations to contribute to the VEBA, the $450M Payment was not a Liability of New GM.  *See* Sale Order, attached to R. 62, at ¶¶ 19, 20; R. 33, Ex. 10, MPA, at p. 22.

19. <u>UAW Proposed Fact No. 6</u>:  Under the terms of the June 26, 2009 MPA, New GM's assumption of the "UAW Collective Bargaining Agreement" was a non-waivable condition of the closing of the sale transaction. (*Id.* at p. 90 § 7.2(d), p. 93 § 7.3(h)).

    <u>New GM Response</u>:  Incomplete.  Pursuant to the MPA, New GM's assumption of the "UAW Collective Bargaining Agreement" followed by New GM and the UAW's entry (and court approval) of the "UAW Retiree Settlement Agreement" (which superseded other agreements with respect to VEBA funding) were *both* non-waivable conditions of the closing of the sale transaction. R. 33, Ex. 10, MPA at p. 87, § 7.2 (introduction), p. 90, §§ 7.2(d) and 7.2(e), p. 93, §§ 7.3(h) and 7.3(i).

20. <u>UAW Proposed Fact No. 7</u>:  Subject to one exclusion not relevant here, the June 26, 2009 MPA defines the term "UAW Collective Bargaining Agreement" to mean "any written or oral Contract, understanding or mutually recognized past practice between [Old GM] and the UAW with respect to Employees." (Id. at p. 21).

    <u>New GM Response</u>:  Incomplete.  New GM does not dispute that the term "UAW Collective Bargaining Agreement" is a defined term under the MPA, and the language quoted above includes part of that definition.  The MPA also defines UAW Retiree Settlement Agreement to be "the UAW Retiree Settlement Agreement to be executed prior to the Closing, substantially in the form attached hereto as <u>Exhibit D</u>."  R. 33, Ex. 10, MPA, at p. 22.

    The "one exclusion" (referenced above by the UAW) is the exclusion of an earlier agreement between Old GM and the UAW regarding the provision and funding of retiree medical benefits (the Henry II agreement).  *See* Ex. 10, MPA at p. 21.  That past agreement regarding retiree medical benefits, as well as any and every

other agreement regarding retiree medical benefits, was superseded by the 2009 RSA (presented to the bankruptcy court as Exhibit D to the MPA). *See* R. 41, Ex. 9, 2009 RSA at § 32.C: "This Settlement Agreement constitutes the entire agreement between the parties regarding the matters set forth herein, and no representations, warranties or inducements have been made to any party concerning this Settlement Agreement, other than the representations, warranties and covenants contained and memorialized in this Settlement Agreement. This Settlement Agreement supersedes any prior understandings, agreements or representations by or between the parties, written or oral, regarding the matters set forth in this Settlement Agreement."

21. UAW Proposed Fact No. 8: The June 26, 2009 MPA defines the term "Employees" to mean, *inter alia*, "any current, *former* or retired employees" of Old GM or its affiliates. (*Id.* at p. 6 (emphasis added)).

   New GM Response: New GM does not dispute that the term "Employees" is a defined term under the MPA, and the language quoted above includes part of that definition.

22. UAW Proposed Fact No. 9: Virtually all of the Delphi retirees covered by the 2007 MOU are former employees of Old GM by virtue of their employment at Delphi prior to Delphi's 1999 spin-off from GM. The 2007 MOU is therefore part of the "UAW Collective Bargaining Agreement" as that term is defined in the June 26, 2009 MPA. (Ex. 11, Declaration of Daniel Sherrick ("Sherrick Decl."), at ¶ 13; Defendant General Motors LLC's Responses to Plaintiff UAW's Statement of Material Facts (Dkt. No. 42), at ¶ 46).

   New GM Response: New GM does not dispute that virtually all of the Delphi retirees covered by the 2007 MOU are former employees of Old GM. The "Class" and "Covered Group" under the UAW Retiree Settlement Agreement include these Delphi-UAW retirees (R. 41, Ex. 9, 2009 RSA, at pp. 2-3, 4):

   - "Class" includes: " . . . (iii) UAW retirees of Delphi Corporation ("Delphi") who as of October 15, 2007 were retired and as of that date were entitled to or thereafter become entitled to Retiree Medical Benefits from GM and/or under the GM Plan under the terms of the UAW-Delphi-GM Implementation Agreement, dated September 26, 2008, and their eligible spouses, surviving spouses and dependents of all such retirees. . . ."

   - "Covered Group" includes: ". . . (ii) all UAW-represented active employees of Delphi or a former Delphi unit who retire from Delphi or such former Delphi unit on or after October 15, 2007, and upon retirement are entitled to or thereafter become entitled to Retiree Medical Benefits from [New Co] and/or under the GM Plan, the [New Co] Plan, or the New Plan under the terms of the UAW-Delphi-GM Implementation Agreement, dated September

CLI-2119426v2

7

>26, 2008, and the eligible spouses, surviving spouses and dependents of all such retirees. . . ."

23. On June 30, 2009, Bondholders Ex. 3, a draft of the VEBA proposal made by Old GM at the May 18, 2009 meeting, was introduced into evidence at the Old GM bankruptcy hearing. *See* R. 42, New GM SMF ¶ 54; R. 41, Ex. 40 at pp. 81-82, Exs. 43 and 44. This Bondholders' Exhibit 3 (Ex. 44 in the record) provided the only mention of the $450M Payment at Old GM's bankruptcy hearing, and it stated that the $450M Payment was excluded from VEBA funding and that any remaining UAW OPEB liability would be $0. R. 41, Ex. 44 at pp. 3, 11.

24. On July 1, 2009, the UAW's David Curson testified on behalf of the UAW and in support of the 2009 RSA. *See* R. 42, New GM SMF ¶ 55, R. 41, Ex. 41 at pp. 205-10. Mr. Curson never mentioned any outstanding additional $450M Payment. *Id.*

25. <u>UAW Proposed Fact No. 10:</u> On July 5, 2009, the bankruptcy court presiding over the Old GM bankruptcy approved the June 26, 2009 MPA. (Ex. 62, Order (I) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., A U.S. Treasury-Sponsored Purchaser; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases In Connection With The Sale; and (III) Granting Related Relief ("July 5, 2009 GM Sale Order") (attached hereto)).

<u>New GM Response</u>: Incomplete. As part of its approval of Old GM's motion, the bankruptcy court expressly approved the 2009 RSA, finding it to be "fair, reasonable and in the best interests of retirees." *See* Sale Order, attached to R. 62 at ¶ 19. The Court instructed that "[t]he Debtors, the Purchaser, and the UAW are *authorized and directed* to perform their obligations under, or in connection with, the implementation of the UAW Retiree Settlement Agreement and to comply with the terms of the UAW Retiree Settlement Agreement." *Id.* (emphasis supplied). The bankruptcy court further ordered that "*all obligations* of the Purchaser and the Sellers to provide Retiree Medical Benefits to members of the Class and the Covered Group shall be governed by the UAW Retiree Settlement Agreement," with capitalized terms as defined in the 2009 RSA. *Id.* at ¶ 20. (Relevant portions of the definitions of "Class" and "Covered Group" are set forth in response to No. 22, above. The 2009 RSA defines "Retiree Medical Benefits" as "all post retirement medical benefits, including but not limited to surgical medical, prescription drug, vision, dental, hearing aid and the $76.20 Special Benefit related to Medicare." R. 41, Ex. 9, 2009 RSA at p. 8.)

In its opinion, the bankruptcy court stated that "[a]s part of the 363 Transaction, the Purchaser and the UAW *have reached a resolution* addressing the ongoing provision of those [retiree medical] benefits. New GM will make contributions to the New VEBA, which will have the obligation to fund the UAW retiree health and welfare benefits. And under the 'UAW Retiree Settlement Agreement,' [*i.e.*, 2009 RSA] New GM will put value into the New VEBA, which will then have the

obligation to fund retiree medical benefits for the Debtors' retirees and surviving spouses represented by the UAW (the 'UAW-Represented Retirees')." *See In re General Motors Corp.*, 407 B.R. 463, 484 (Bankr. S.D.N.Y. 2009) (emphasis supplied). In making this determination, the bankruptcy court particularly credited the testimony of UAW representative David Curson, finding that "[t]he UAW was successful in preserving an acceptable level of core medical benefits." *Id.* at 519.

26. <u>UAW Proposed Fact No. 11</u>: The July 5, 2009 GM Sale Order expressly provides that, effective as of the closing of the sale transaction, New GM will assume "the UAW Collective Bargaining Agreement" – as that term is defined in the June 26, 2009 MPA – "and *all* liabilities thereunder." (*Id.* at p. 1 n. 1, p. 12 ¶ Z (emphasis added); *see also id.* at p. 16 ¶ FF; p. 29 ¶ 22).

<u>New GM Response</u>: Incomplete. The complete language of paragraph Z of the Sale Order references *both* the UAW Collective Bargaining Agreement and the UAW Retiree Settlement Agreement:

> Effective as of the Closing of the 363 Transaction, the Debtors will assume and assign to the Purchaser the UAW Collective Bargaining Agreement and all liabilities thereunder. *The Debtors, the Purchaser, the UAW and Class Representatives intend that their actions in connection with the UAW Retiree Settlement Agreement and related undertakings incorporate the compromise of certain claims and rights* and shall be deemed to satisfy the requirements of 29 U.S.C. § 186(c)(2).

*See* Sale Order, attached to R. 62, at pp. 12-13, ¶ Z (emphasis supplied). Similarly, paragraph FF of the Sale Order references the assumption of the UAW Collective Bargaining Agreement followed by the entry by the Purchaser and the UAW into the UAW Retiree Settlement Agreement, "which, among other things, provides for the financing by the Purchaser of *modified* retiree healthcare obligations for the Class and Covered Group (as defined in the UAW Retiree Settlement Agreement) through contributions by the Purchaser (as referenced in paragraph Y herein)." *Id.* at p. 16, ¶ FF (emphasis supplied). Paragraph Y sets forth how the 2009 RSA resolves all issues regarding to retiree medical benefits to UAW retirees, including how those benefits would be funded by New GM. *Id.* at pp. 11-12, ¶ Y.

27. The 2009 RSA was effective on July 10, 2009. *See* R. 41, Ex. 9.

28. <u>UAW Proposed Fact No. 12</u>: The provisions of the June 26, 2009 MPA and the July 5, 2009 GM Sale Order dealing with New GM's assumption of the "UAW Collective Bargaining Agreement" do not distinguish between, or otherwise carve out any, individual terms of the "UAW Collective Bargaining Agreement." Rather, by operation of these provisions, New GM assumed "all" of the liabilities

of the "UAW Collective Bargaining Agreement," without any stated exceptions. By virtue of the fact that the 2007 MOU is part of the "UAW Collective Bargaining Agreement," *see supra* ¶ 9, one of those assumed liabilities is the $450 million contingent payment obligation at issue in this litigation. (Ex. 10 at p. 11 ("Liabilities"), p. 23 § 2.1, p. 25 § 2.2(a)(x), p. 28 § 2.3(a)(ii), pp. 76-77 § 6.17(f); Ex. 62 at p. 12 ¶ Z, p. 16 ¶ FF, p. 29 ¶ 22).

New GM Response:  Disputed, as contrary to the undisputed terms of the agreements between the parties.  Pursuant to the UAW Retiree Settlement Agreement, New GM did not assume any obligation to make the $450M Payment.  Rather, "*all obligations* of the Purchaser and the Sellers to provide Retiree Medical Benefits to members of the Class and the Covered Group shall be governed by the UAW Retiree Settlement Agreement," and New GM and the UAW were directed to comply with the terms of the 2009 RSA  *See* Sale Order, attached to R. 62 at ¶¶  19, 20 (emphasis supplied).  This provision of the Sale Order confirms the language of the 2009 RSA itself, which stated that the obligations detailed in that agreement are New GM's "sole" obligations and that New GM's obligations are "fixed and capped" by the terms of the 2009 RSA.  *See* R. 41, Ex. 9 at Introduction, §§ 2, 5, 8.  The 2009 RSA also provides that the New VEBA and New Plan shall be "exclusively responsible" for "all" Retiree Medical Benefits, and that New GM shall have "only the following" obligations to the New VEBA and New Plan.  *Id.* at Intro, §§ 2, 8.   The UAW also "may not seek to obligate" New GM to "make any other payments for the purpose of providing Retiree Medical Benefits to the Class or the Covered Group" or "provide or assume the cost of Retiree Medical Benefits for the Class or Covered Group through any other means."  *See* R. 41, Ex. 9 at § 14.  The 2009 RSA also provides that "all provisions of applicable collective bargaining agreements, contracts, letters and understandings in any way related to Retiree Medical Benefits for the Class and the Covered Group are terminated on the Implementation Date, or otherwise amended so as to be consistent with this Settlement Agreement."  *Id.* at § 5(D).

29. UAW Proposed Fact No. 13:  Subsequent to the approval of the June 26, 2009 MPA by the July 5, 2009 GM Sale Order, and with the exception of the $450 million payment obligation in dispute in this litigation, New GM has been performing the obligations of Old GM set out in the 2007 MOU, including "topping up" pension benefits for thousands of Delphi retirees at significant cost to New GM. (Ex. 11, Sherrick Decl. at ¶ 12).

New GM Response:  New GM does not dispute that it maintains certain obligations pursuant to the 2007 MOU, including certain pension-related obligations for Delphi-UAW retirees.  However, none of these obligations include any obligation to pay for or provide retiree medical benefits. *See* R. 41, Ex. 2, 2007 MOU at § F.  The $450M Payment is a payment to pay for retiree medical benefits.  *See* R. 61 at p. 1; R. 42, New GM SMF ¶ 50, and specifically the sworn testimony of UAW witnesses Gettelfinger (Ex. 30, pp. 98, 158-59), Curson (Ex. 31, p. 67), and Yearley (Ex. 33, p. 53).  Retiree medical benefits are separate from

pension benefits. *Southwestern Bell Tel. Co.,* 28 F.3d at 168.  Pursuant to the UAW Retiree Settlement Agreement, New GM did not assume any obligation to make the $450M Payment.  *See* Sale Order, attached to R. 62, at ¶¶ 19, 20.

30. <u>UAW Proposed Fact No. 14:</u>  On February 24, 2010, New GM filed a brief in the bankruptcy court presiding over the Delphi bankruptcy in which it made the following statement regarding its assumption of the 2007 MOU: "Pursuant to the GM Sale Order, *New GM assumed the UAW 2007 MOU* (which is included as a 'UAW Collective Bargaining Agreement' as that term is used in the GM Sale Order), and thus agreed, *among other things*, to top up the pension benefits of the covered UAW employees of the [Delphi] Debtors." (Ex. 22, Reply of General Motors LLC (f/k/a General Motors Company) to Objection to Motion to Enforce Modified Plan and Plan Modification Order, at p. 8 ¶ 19 (emphasis added)).

   <u>New GM Response</u>:  New GM does not dispute that it made this statement (related to pension benefits).  The $450M Payment is a payment to pay for retiree medical benefits.  *See* R. 61 at p. 1; R. 42, New GM SMF ¶ 50, and specifically the sworn testimony of UAW witnesses Gettelfinger (Ex. 30, pp. 98, 158-59), Curson (Ex. 31, p. 67), and Yearley (Ex. 33, p. 53).  Retiree medical benefits are separate from pension benefits. *Southwestern Bell Tel. Co.,* 28 F.3d at 168.  Pursuant to the UAW Retiree Settlement Agreement, New GM did not assume any obligation to make the $450M Payment.  *See* Sale Order, attached to R. 62, at ¶¶ 19, 20.

Dated: June 28, 2013

Respectfully submitted,

/s/ Johanna Fabrizio Parker

| | |
|---|---|
| Edward W. Risko (P36699) | Robert S. Walker (Ohio Bar No. 0005840) |
| edward.w.risko@gm.com | *(Admitted to E.D. Michigan 08/18/93)* |
| General Motors | rswalker@jonesday.com |
| Legal Staff | Johanna Fabrizio Parker (Ohio Bar No. 0071236) |
| 300 Renaissance Center | *(Admitted to E.D. Michigan 09/20/12)* |
| Suite MC 482-C24-C66 | jfparker@jonesday.com |
| Detroit, Michigan 48265-3000 | JONES DAY |
| | North Point |
| | 901 Lakeside Avenue |
| | Cleveland, Ohio 44114-1190 |
| | Telephone: 216-586-3939 |
| | Facsimile: 216-579-0212 |

*Counsel for Defendant General Motors LLC*

CERTIFICATE OF SERVICE

      I hereby certify that, on June 28, 2013, I electronically filed the foregoing Defendant General Motors LLC's Consolidated and Chronological Response To Plaintiff UAW's Supplemental Statement of Material Facts and Statement of Additional Material Facts with the Clerk of the Court using the ECF system, which will send notification of such filing to the following: W. Gary Kohlman, Andrew D. Roth, and Ramya Ravindran, Bredhoff & Kaiser P.L.L.C., 805 15th Street N.W., Suite 1000, Washington, D.C. 20005; and Jeffrey D. Sodko, UAW Legal Department, 8000 E. Jefferson Ave., Detroit, Michigan 48214.

      /s/ Johanna Fabrizio Parker
      *Counsel for Defendant General Motors LLC*